[Cite as *In re T.C.*, 2018-Ohio-4369.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: T.C.
      E.C.

C.A. Nos.    18AP0021
                 18AP0022

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.    2018 JUV-C 00006
              2018 JUV-C 00007

DECISION AND JOURNAL ENTRY

Dated: October 29, 2018

SCHAFER, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Wayne County Court of Common Pleas, Juvenile Division, that adjudicated her children dependent, and/or neglected, and/or abused. This Court affirms in part, reverses in part, and remands.

I.

{¶2} Mother is the biological Mother of T.C. (d.o.b. 4/15/05) and E.C. (d.o.b. 8/24/07). Although he was properly served, the father of the children did not participate in the proceedings below and is not a party to this appeal.

{¶3} On December 11, 2017, when she was only 12 years old, T.C. and a friend were forcibly directed at gunpoint by a stranger to the basement of T.C.'s home, where the two girls were raped. Mother took T.C. to the Wayne County Children's Advocacy Center ("CAC") for a forensic interview and medical exam. Based on the trauma sustained by the entire family as a

result of the sexual assault, Wayne County Children Services Board ("CSB" or "the agency") offered assistance to Mother and her children. After Mother failed to follow up with medical and mental health services for T.C., as well as a later referral to the agency regarding concerns for the children's care and home environment, CSB tried multiple times to contact Mother to discuss the issues. When phone calls, text messages, and a home visit failed to allow contact with Mother, a CSB caseworker called for assistance by the police.

{¶4} On January 2, 2018, a police officer joined an agency caseworker at Mother's home to try to discuss a safety plan for T.C. and E.C., who had been staying with a family friend. After several minutes of pounding on the door to the home where Mother lived, a man opened the foyer door and said he would wake Mother. Several minutes later, Mother appeared. Despite repeated efforts, the caseworker and police officer were unable to communicate with Mother to develop a safety plan for the children because of Mother's belligerent behavior. Ultimately, Mother returned to her upstairs apartment and slammed the door. Because the family friend who had the children could no longer care for them, the police officer took T.C. and E.C. into custody pursuant to Juv.R. 6.

{¶5} The next day, CSB filed complaints in the Wayne County Juvenile Court, alleging that T.C. was an abused, neglected, and dependent child; and that E.C. was a neglected and dependent child. After a shelter care hearing, the court issued an emergency order of temporary custody to the agency. The juvenile court further appointed a guardian ad litem, as well as a separate attorney for the children. CSB filed a proposed case plan.

{¶6} After a two-day adjudicatory hearing, the juvenile court found T.C. to be an abused, neglected, and dependent child. It found E.C. to be a dependent child. The court further dismissed some allegations of neglect and dependency regarding the children. After a later

dispositional hearing, the juvenile court ordered both children into the temporary custody of CSB, adopted the case plan as the order of the court, and ordered limited visitation for Mother. Mother filed two timely notices of appeal, one for each child. She raises one assignment of error for this Court's review in her consolidated appeals.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT'S JUDGMENT FINDING THE CHILDREN TO BE ABUSED, NEGLECTED AND/OR DEPENDENT CHILDREN WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶7} Mother argues that the juvenile court's findings that T.C. is an abused, neglected, and dependent child; and that E.C. is a dependent child are against the manifest weight of the evidence. This Court agrees regarding the challenge to the findings that T.C. and E.C. are dependent children, but disagrees regarding the challenge to the findings that T.C. is an abused and neglected child.

{¶8} As a preliminary matter, we note that Mother incorporates an additional argument in her brief. Specifically, she argues that the juvenile court erred by failing to make any written findings of fact and conclusions of law relative to its dependency orders, as required by R.C. 2151.28(L). CSB concedes that the trial court failed to make the necessary findings and conclusions, but asserts that it is harmless error.

{¶9} R.C. 2151.28(L) provides:

If the court, at an adjudicatory hearing held pursuant to division (A) of this section upon a complaint alleging that a child is an abused, neglected, dependent, delinquent, or unruly child or a juvenile traffic offender, determines that the child is a dependent child, the court shall incorporate that determination into written findings of fact and conclusions of law and enter those findings of fact and conclusions of law in the record of the case. The court shall include in those findings of fact and conclusions of law specific findings as to the existence of any

danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child.

{¶10} This Court has sua sponte recognized the juvenile court's compliance with the mandates of R.C. 2151.28(L). *See In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 7 (noting the juvenile court's compliance with the statute even though the appellant-parent did not raise the issue). When addressing direct challenges to the juvenile court's lack of compliance with the statute, we have noted the requirement for "specific factual findings about the basis of [the juvenile court's] dependency adjudication[.]" *In re T.H.*, 9th Dist. Summit No. 28010, 2016-Ohio-5597, ¶ 9. Indeed, the clear and plain language of the statute mandates such articulation. *See In re M.B.*, 9th Dist. Summit No. 21760, 2004-Ohio-597, ¶ 17-18 (Whitmore, J., dissenting in part) (comparing the express requirement for findings in R.C. 2151.28(L) to the lack of such a requirement in R.C. 2151.414(B)(1) relevant to an award of permanent custody). So important are the findings of fact substantiating an adjudication of dependency that this Court has even noted the significance of the absence of such findings when considering whether the agency has later established a permanent custody first-prong finding that the parent has failed to remedy the conditions which caused the child to be placed outside the home. *See In re G.D.*, 9th Dist. Summit No. 27337, 2014-Ohio-3476, ¶ 16 (discussing the connection between R.C. 2151.28(L) and R.C. 2151.414(E)(1), even though the parents had not filed objections to the prior dependency adjudication).

{¶11} Broad, general statements of fact, which might be adequate in a complaint alleging a child to be a dependent child, do not meet the specificity requirements of R.C. 2151.28(L). *See In re S.W.*, 12th Dist. Butler Nos. CA2006-09-211 and CA2006-10-263, 2008-Ohio-1194, ¶ 11. Instead, the juvenile court must recite facts describing any dangers and underlying family problems that exist for the child with specific detail to allow the reviewing

court to "determine what facts the court found relevant in determining [the child] was dependent, what facts the conclusions of law were based upon, and what specific conclusions of law were made." *See id.* at ¶ 12. Where the juvenile court has failed to make the specific findings of fact and conclusions of law in support of its adjudication of dependency, the judgment must be reversed and the matter remanded to the trial court to make the statutorily required written findings. *In re S.L.*, 3d Dist. Union Nos. 14-15-07 and 14-15-08, 2016-Ohio-5000, ¶ 9; *In re A.B.C.*, 5th Dist. Stark No. 2010CA00087, 2011-Ohio-531, ¶ 31. *See also In re M.B.*, 2004-Ohio-597, at ¶ 10 (relative to permanent custody, reversing and remanding for the juvenile court to make the findings necessary to allow for effective appellate review, rather than a determination in the first instance).

{¶12} In *In re S.L., supra*, the juvenile court's judgment entry supported its adjudication as follows:

> Thereupon, the court proceeded to hear testimony as to the facts and circumstances of this matter. Upon evidence presented, the Court FINDS by clear and convincing evidence that [S.L.] is an abused child pursuant to R.C. 2151.031(A) and a dependent child pursuant to R.C. 2151.04(C); and [A.L.] is a dependent child pursuant to R.C. 2151.04(C) and (D).

*Id.* at ¶ 8. The Third District concluded that "this recitation fails to satisfy the requirement of R.C. 2151.28(L) * * *" for specific findings of fact to support an adjudication of dependency. *Id*. The instant case involving T.C. and E.C. is analogous.

{¶13} In this case, the juvenile court recited the names of the eight witnesses who testified at the adjudicatory hearing. The court then wrote:

> Based on the evidence and testimony presented, and considering the circumstances present at the time of removal and on the date of the filing of the complaint, the Court finds that T.C. is an abused, neglected, and dependent child. Based on the evidence and testimony presented, and considering the circumstances present at the time of removal and on the date of the filing of the complaint, the Court finds that E.C. is a dependent child.

**{¶14}** The juvenile court then ordered that T.C. was an abused, neglected, and dependent child; and that E.C. was a dependent child. This Court concludes that the juvenile court's recitation fails to satisfy the statutory mandates of R.C. 2151.28(L) that the court make written findings of fact and conclusions of law, including "specific findings as to the existence of any danger to the child and any underlying family problems that are the basis for the court's determination that the child is a dependent child." Accordingly, with regard solely to the adjudications of T.C. and E.C. as dependent children, this matter is reversed and remanded to the juvenile court to make the required written findings of fact and conclusions of law in compliance with R.C. 2151.28(L).

Manifest weight

**{¶15}** Juvenile abuse, neglect, and dependency cases are initiated by the filing of a complaint. *See* Juv.R. 22(A); Juv.R. 10; R.C. 2151.27(A). The complaint is "the legal document that sets forth the allegations that form the basis for juvenile court jurisdiction." Juv.R. 2(F). The juvenile court must base its adjudication on the evidence adduced at the adjudicatory hearing to support the allegations in the complaint. *See In re Hunt*, 46 Ohio St.2d 378, 380 (1976). If allegations in the complaint are not proved by clear and convincing evidence at the adjudicatory hearing, the juvenile court must dismiss the complaint. Juv.R. 29(F); R.C. 2151.35(A)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶16}** This Court reviews as follows:

In determining whether the juvenile court's adjudication [ ] is against the manifest weight of the evidence, this court [reviews] the entire record, weighs the evidence

and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [adjudication] must be reversed[.]

*In re R.L.*, 9th Dist. Summit No. 28387, 2017-Ohio-4271, ¶ 8, quoting *In re C.S.*, 9th Dist. Summit No. 26178, 2012-Ohio-2884, ¶ 5, quoting *In re A.W.*, 9th Dist. Summit No. 25601, 195 Ohio App.3d 379, 2011-Ohio-4490, ¶ 8.

**{¶17}** Mother challenges the findings that T.C. is abused pursuant to R.C. 2151.031(A) and neglected pursuant to R.C. 2151.03(A)(3), and that T.C. and E.C. are dependent pursuant to R.C. 2151.04(A) and (C).

Abuse

**{¶18}** R.C. 2151.031(A) defines an "abused child" as one who is "the victim of 'sexual activity' as defined under Chapter 2907. of the Revised Code, where such activity would constitute an offense under that chapter, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child[.]" "Sexual activity" includes both sexual conduct and sexual contact. R.C. 2907.01(C). The offense of rape is a prohibition of sexual conduct with another under certain circumstances. R.C. 2907.02. The abuse need not be committed by a parent; neither must a parent be in any way at fault relative to the commission of the abuse. *In re Miles*, 9th Dist. Wayne No. 01CA0054, 2002-Ohio-2438, ¶ 26 (Carr, J., dissenting on other grounds). As the statute makes no reference to parental fault, "'[a]ll that is necessary is that the child be a victim, regardless of who is responsible for the abuse.'" *Id.*, quoting *In re Pitts*, 38 Ohio App.3d 1, 5 (5th Dist.1987).

**{¶19}** The clear and convincing evidence in this case established that a stranger forced T.C. and her friend at gunpoint into the basement of T.C.'s home and raped both girls. The forensic interviewer from CAC testified that T.C.'s and her friend's narratives were consistent.

The doctor who examined T.C. approximately six hours after the incident testified that, although there were no physical findings of sexual assault, it was not unusual for bruising not to appear for several days. The doctor testified that T.C.'s oral history was consistent with her having been sexually assaulted. Based on the girls' physical description, the Wooster police arrested a suspect. CSB presented certified copies of indictments charging J.M. with the rapes of T.C. and her friend. Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in adjudicating T.C. an abused child.

Neglect

{¶20} R.C. 2151.03(A)(3) defines "neglected child" as one "[w]hose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being[.]"

{¶21} The clear and convincing evidence in this case established that Mother agreed to bring T.C. for a follow up appointment with the pediatrician at CAC a couple days after the child's initial evaluation to address the child's complaints about anal pain and issues regarding sexually transmitted infections. The man who raped T.C. had admitted to having chlamydia, so timely follow up for the child was an important health matter. Nevertheless, Mother failed to bring T.C. for a follow up appointment. The pediatrician did not see T.C. again until sometime in January 2018, when a CSB caseworker took the child for an examination after removal from Mother's care.

{¶22} After the sexual assault of T.C., a CSB caseworker visited Mother at home to discuss case management services to help the family deal with the trauma. The caseworker

emphasized the need for mental health services for T.C., particularly trauma-based services. Mother rejected those services and informed the caseworker that she would seek counseling services for the children from their school. Thereafter, a clinician at the Edgewood Middle School, where both T.C. and E.C. attend, reached out to Mother. The clinician, a guidance counselor, and the school principal met with Mother and both children in Mother's home to inform them of services available from the school to address issues related to the trauma associated with the assault of T.C. Although Mother completed the TANF application at the meeting and returned it to the clinician to facilitate payment for any services, Mother failed to complete and return the outpatient packet necessary to allow any counseling services to begin.

{¶23} Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in adjudicating T.C. a neglected child. The physical and emotional trauma sustained by a 12-year old rape victim reasonably warranted ongoing medical and mental health services. Mother appeared to recognize the need for follow up services and agreed to facilitate them. Nevertheless, the clear and convincing evidence established that Mother failed to ensure that T.C. received medical care to address her physical pain and possible sexually transmitted infection, and trauma-based counseling services to address mental health issues.

Dependency

{¶24} This Court previously determined that the juvenile court erred by failing to issue written findings of fact and conclusions of law regarding the allegations of the children's dependency as required by R.C. 2151.28(L). Accordingly, we are compelled to reverse the adjudications of dependency and remand for the juvenile court to comply with the statutory mandates.

Conclusion

**{¶25}** For the foregoing reasons, the juvenile court's judgment adjudicating T.C. an abused and neglected child, being supported by clear and convincing evidence, is not against the manifest weight of the evidence. The juvenile court, however, erred by failing to comply with the requirements of R.C. 2151.28(L) when ordering that T.C. and E.C. are dependent children. To that extent, this Court reverses and remands the matter with regard to dependency to allow the juvenile court to make the requisite findings pursuant to R.C. 2151.28(L). Mother's sole assignment of error is overruled in part, and sustained in part.

### III.

**{¶26}** Mother's assignment of error is overruled as to the adjudication of T.C. as an abused and neglected child. The assignment of error is sustained as to the adjudications of T.C. and E.C. as dependent children. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MARY G. WARLOP, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.

RENEE JACKWOOD, Attorney at Law, for the children.

KAREN WIEST, Guardian ad Litem.