[Cite as *In re Z.H.*, 2022-Ohio-184.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: Z.H.

C.A. No.     29926

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 20 05 0358

DECISION AND JOURNAL ENTRY

Dated: January 26, 2022

SUTTON, Judge.

{¶1}     Appellant, B.H. ("Mother") appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her minor child dependent and placed the child in the temporary custody of Summit County Children Services Board ("CSB").  This Court affirms.

I.

{¶2}     Mother is the biological mother of Z.H., born May 17, 2020.   The day after his birth, Z.H. was transferred to the neonatal intensive care unit ("NICU") at Akron Children's Hospital because he had been diagnosed with tachypnea, which causes breathing and feeding difficulties.   On May 20, 2020, CSB filed a complaint, alleging that Z.H. was an abused, neglected, and/or dependent child because Mother tested positive for amphetamine at the time of the child's birth.   The complaint further alleged that Mother had a long history of substance abuse, domestic violence, and mental health problems; that she had lost legal custody of an older

child because of the same problems; and that she had been convicted several times of drug-related offenses.

{¶3} The matter proceeded to adjudicatory and dispositional hearings before a magistrate. Mother filed objections to the magistrate's adjudicatory decision, which were later overruled by the trial court. Mother now appeals from the trial court's independent judgment that adjudicated Z.H. dependent and placed the child in the temporary custody of CSB. She raises two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY CONSIDERING IMPROPER EVIDENCE.

{¶4} This Court will address Mother's second assignment of error first because it asserts that the trial court should not have considered some of the evidence presented at the adjudicatory hearing. Specifically, under this assigned error Mother argues that the trial court erred in considering (1) the child's medical records and (2) court records from the legal custody case involving Mother's older child and the criminal cases involving some of Mother's prior drug convictions. We will address each argument separately.

### Child's Medical Records

{¶5} Mother asserts that the trial court erred in considering the medical records involving Z.H.'s birth and NICU hospital stay insofar as they connected Mother's prenatal drug use to the child's medical condition. Mother argues that these records were inadmissible because, among other reasons, the physician who prepared the records did not testify and was not subject to cross-examination about his medical conclusions. During the adjudicatory hearing, Mother raised this same argument. The magistrate agreed that the physician statements within

the medical records were inadmissible and explicitly stated in the adjudicatory decision that she did not consider that evidence. Therefore, the magistrate concluded that CSB had failed to establish a nexus between Mother's prenatal drug use and Z.H.'s medical condition. Nevertheless, the magistrate concluded that CSB had presented clear and convincing evidence to prove that Z.H. was dependent under R.C. 2151.04(C).

{¶6} The trial court adopted the magistrate's decision the same day. Mother later filed objections to the adjudicatory decision, but CSB did not object to the magistrate's refusal to consider the medical records insofar as they suggested that Z.H.'s medical condition had been caused by Mother's drug use. In its order overruling Mother's objections to the magistrate's decision, however, the trial court recited some of the medical evidence, including statements about the child's medical diagnosis and Mother's drug use that the magistrate explicitly refused to consider. For example, the trial court noted that the medical records had included statements that Z.H. had been "affected by maternal use of other drugs of addiction[]" and that Mother's pregnancy had been complicated by "Amphetamine use[.]"

{¶7} The trial court did not explain that it was considering the medical evidence, that it disagreed with the magistrate's ruling to exclude this evidence, or that CSB had proven a causal link between Mother's drug use and the child's condition. Consequently, it is not clear from the trial court's order how, if at all, this evidence factored into the adjudicatory decision. Nevertheless, even if we assume that the trial court considered this medical evidence in its adjudicatory decision, and erred in doing so, Mother has failed to demonstrate reversible error.

{¶8} To demonstrate reversible error, Mother must establish not only that the trial court erred, but also that the error resulted in prejudice to her defense. *In re F.B.*, 9th Dist. Summit Nos. 28960 and 28985, 2019-Ohio-1738, ¶ 30, citing *In re P.T.*, 9th Dist. Summit No. 24207,

2008-Ohio-4690, ¶ 17. Civ.R. 61, which prohibits a reviewing court from reversing a harmless error of the trial court, provides:

> No error in * * * the admission * * * of evidence * * * is ground for * * * setting aside a verdict or * * * otherwise disturbing a judgment * * * unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*See also* R.C. 2309.59.

{¶9} Under Civ.R. 61, for this Court to find that an error is harmless, it must weigh the prejudicial effect of the error and "determine that, if th[e] error[] had not occurred, the * * * trier of the facts would probably have made the same decision." *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165 (1980), quoting *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349 (1950), paragraph three of the syllabus.

{¶10} Mother has failed to demonstrate that, without the medical evidence suggesting that Mother's drug use caused the child's medical condition, the trial court would not have adjudicated Z.H. as a dependent child under R.C. 2151.04. In fact, the record explicitly shows that the original trier of fact, the magistrate, excluded this evidence and found that CSB presented clear and convincing evidence of dependency. As will be explained in detail in this Court's review of Mother's first assignment of error, a dependency finding was fully supported by the other evidence presented at the adjudicatory hearing. Therefore, Mother has failed to demonstrate reversible error, even if the trial court improperly considered the medical evidence when ruling on her objections and entering its independent adjudication.

### Mother's Juvenile and Criminal Court History

{¶11} Mother also challenges the trial court's admission of records from the juvenile case involving her older child and records of her criminal drug convictions that predated this

case. She argues that those records were inadmissible because she had not been put on notice that the prior juvenile records were relevant to this case and the juvenile and criminal records included evidence of her prior conduct, which was inadmissible under Evid.R. 404(B).

{¶12} Mother briefly argues that she was not given notice that her past juvenile case was relevant in this case. The record reveals, however, that CSB explicitly alleged in the complaint that "Mother's older child, [A.W.], age 5 is placed in the legal custody of her paternal great grandmother, [L.W.] due to parental substance abuse, domestic violence, lack of ability to meet the child's needs, and criminal drug related charges. [L.W.] was granted legal custody on July 7, 2017[.]" Therefore, Mother's argument that she was not given notice about the relevancy of the prior juvenile case is unfounded.

{¶13} Mother also asserts that the other child's juvenile court case and evidence of her prior criminal drug convictions were inadmissible under Evid.R. 404(B), which provides, in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes[.]

Although Evid.R. 404(B) identifies specific "other" purposes for which prior acts evidence may be admissible, "the listed exceptions are not exclusive[.] *State v. Myers*, 9th Dist. Summit No. 25737, 2012-Ohio-1820, ¶ 10, citing *State v. Smith,* 49 Ohio St.3d 137, 140 (1990). Other acts evidence "may be admissible so long as it is admitted for any proper purpose other than proving the defendant's propensity to act in conformity with a particular trait of his character." *Id.*

{¶14} CSB presented, and the trial court admitted, evidence that Mother's long history of drug use had led to several misdemeanor and felony drug convictions and to the loss of legal custody of an older child. The trial court's consideration of this evidence did not violate Evid.R. 404(B) because the evidence was not admitted to show that Mother acted "in conformity

therewith" by again abusing drugs in this case. Evidence of Mother's more recent drug use was already before the trial court through other evidence.

{¶15} Instead, the evidence about Mother's prior convictions, her repeated violations of the conditions of her community control by committing further crimes and continuing to abuse drugs, and the juvenile case involving her other child was admitted to establish that Mother had a long-standing history of drug use and resulting problems that had seriously affected her ability to provide a safe and stable home for herself or a child. That evidence, coupled with evidence of Mother's more recent drug use and violations of the conditions of her current community control, was directly relevant to Mother's ability to provide Z.H. with a safe and stable home.

{¶16} Mother has failed to demonstrate that the trial court committed reversible error in its admission or consideration of the medical records, records from the prior juvenile case, or evidence about her prior drug convictions. Mother's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY FINDING THE CHILD WAS DEPENDENT.

{¶17} Mother's first assignment of error challenges the trial court's finding of dependency. The trial court found that Z.H. was dependent under R.C. 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" The trial court was required to find that CSB established dependency by clear and convincing evidence. *See In re I.K.-W.*, 9th Dist. Summit No. 29100, 2019-Ohio-2807, ¶ 17, citing R.C. 2151.35(A)(1) and Juv.R. 29(E)(4). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption*

*of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶18} Mother incorrectly asserts that a finding of dependency requires proof "that [she] was 'willfully' at fault in creating the dependency situation." In fact:

> [a] dependency finding under R.C. 2151.04(C) does not require specific parental fault; rather the focus is on the child's situation to determine whether the child is without proper or adequate care or support. *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶ 19. "The conduct of the parent is relevant only insofar as it forms a part of the child[ ]'s environment and it is significant only if it has a detrimental impact on [him]." *In re A.C.*, 9th Dist. Wayne Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, ¶ 14, citing *In re Burrell*, 58 Ohio St.2d 37, 39 (1979).

*In re I.T.*, 9th Dist. Summit Nos. 27513, 27560, and 27581, 2016-Ohio-555, ¶ 32.

{¶19} Mother also relies on this Court's decision in *In re V.R.*, 9th Dist. Summit No. 23527, 2008-Ohio-1457, and argues that a positive drug screen of the mother at the birth of an infant does not constitute clear and convincing evidence that the infant is dependent under R.C. 2151.04(C). The facts of *In re V.R.*, however, are distinguishable from the facts of this case for many reasons. In *In re V.R.*, the only evidence before the court to establish dependency was that the mother tested positive for alcohol, marijuana, and opiates prior to the birth of V.R., and that she had been given morphine at the hospital shortly before the toxicology screen. *Id*. at ¶ 1, 14. V.R. was born a healthy baby and a toxicology test had not revealed the presence of any drugs or alcohol in the infant's system. *Id*. at ¶ 2. Moreover, V.R.'s mother had demonstrated an ability to properly care for the child and had a plan in place to raise the child in an apartment that had been deemed suitable by CSB. *Id*. at ¶ 3, 14. This Court reversed that dependency adjudication, concluding that, standing alone, "[Mother's] positive toxicology screen and admission to the one time use of marijuana just prior to the birth of the baby is not clear and convincing evidence of dependency." *Id*. at ¶ 24.

{¶20} In this case, CSB presented much more evidence than Mother's positive toxicology screen for amphetamine. To begin with, Z.H. was not a normal, healthy child, as he suffered from breathing and feeding difficulties, which had required his admission into the NICU. Although no toxicology screen had been performed on the infant and no evidence was admitted at the hearing that his medical problems had been caused by Mother's prenatal drug use, the fact remained that the child had special medical needs that would require a higher level of care than a healthy infant would. Mother also lacked stable housing for her and her child, as she was facing eviction. Although Mother argues on appeal that she had not yet been evicted, the evidence was not disputed that she was facing imminent eviction and had no alternative plan for housing.

{¶21} Moreover, Mother's history of drug abuse had caused other problems in her life that had affected her ability to parent a newborn child. Mother focuses on evidence that she had used Xanax during her pregnancy, and emphasizes that CSB had failed to prove that she did not have a prescription. Nevertheless, Mother does not dispute the evidence before the trial court that she admitted that she used intravenous methamphetamine while pregnant, that she had tried to wean herself off the drug by injecting water into her arm, or that she admitted that she had smoked marijuana that may have been laced with amphetamine shortly before the birth of Z.H.

{¶22} Although CSB did not know how many times Mother had used drugs while pregnant with Z.H., evidence about her history of drug abuse was not limited to one or two isolated incidents during this case. Mother has a history of misdemeanor and felony drug convictions, dating back several years. Mother lost custody of an older child in 2017 because she had been abusing methamphetamine in the home where she lived with the child, did not properly care for the child, exposed the child to drugs and drug paraphernalia, and was later

incarcerated because of criminal drug activity. That child was ultimately placed in the legal custody of the paternal great grandmother.

{¶23} While pregnant with Z.H., Mother was convicted of aggravated possession of drugs, a fifth-degree felony. During November 2019, she was sentenced to a 12-month period of incarceration, but the sentence was suspended, and she was placed on community control for two years. The conditions of Mother's community control included that she refrain from using illegal drugs and that she submit to drug testing as directed by her probation officer.

{¶24} Mother had not been charged with a violation at the time of the hearing, but the evidence at the hearing demonstrated that Mother had repeatedly violated the conditions of her community control by failing to submit to required drug tests and for testing positive for illegal drugs in the hospital. Consequently, Mother was potentially facing incarceration on her original sentence.

{¶25} Given all the evidence admitted at the adjudicatory hearing about Mother's inability to provide a suitable home for Z.H., the trial court did not err in finding that the child's "condition or environment" warranted the state "in assuming the child's guardianship." R.C. 2151.04(C). Mother's first assignment of error is overruled.

III.

{¶26} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgement affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

BETTY SUTTON
FOR THE COURT

 

CARR, P. J.
CALLAHAN, J.
CONCUR.

 

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JAMES BRIGHTBILL, Attorney at Law, for Appellee.

NEIL P. AGARWAL, Guardian ad Litem.